# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

UNITED STATES OF AMERICA,    )
                                    )

Plaintiff,               )
                                    )

vs.                       )    CAUSE NO. 2:01-CR-73
                                    )

STYLES TAYLOR, *et al.*,    )
                                    )

Defendant.              )

## OPINION AND ORDER

This matter is before the Court on Defendant Taylor's Motion for Relief from Prejudicial Joinder, filed on March 23, 2010. (DE #1085.) For the reasons set forth below, as stated during the evidentiary hearing on May 4, 2012, this motion is **DENIED**.

## BACKGROUND

In 2003, Defendants Styles Taylor ("Taylor"), Keon Thomas ("Thomas"), and Damione Thomas, were charged by way of a Superseding Indictment with conspiracy to commit a Hobbs Act robbery resulting in death in violation of 18 U.S.C. §§ 1951 and 2 (Count 1); Hobbs Act robbery resulting in death in violation of 18 U.S.C. §§ 1951 and 2 (Count 2); and murder in violation of 18 U.S.C. §§ 924(j), 924(c)(1) and 1951 and 2 (Count 3). Additionally, Taylor was charged with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) and

2 (Count 4), and Thomas was charged with the same (Counts 5 & 6). Finally, Defendant Adam Williams ("Williams") was charged with being an accessory after the fact in violation of 18 U.S.C. §§ 3, 924, and 1951 (Count 7) and perjury in violation of 18 U.S.C. § 1623 (Count 8). Based on the Superseding Indictment and the Notice of Special Findings contained within it, the Government sought the death penalty for Taylor and Thomas

Both Damione Thomas and Williams entered into plea agreements with the Government in September of 2003; however, Taylor and Thomas proceeded to trial in August of 2004. Damione Thomas testified at the trial. In September of 2004, the jury found Taylor and Thomas guilty of all counts, and both men were ultimately sentenced to life in prison rather than to death.

The Seventh Circuit Court of Appeals remanded the case for a new trial based on *Batson* issues during jury selection, and, pursuant to L.R. 40.1(f) and Seventh Circuit Rule 36, the case was reassigned to the undersigned in July of 2011. This Court set the matter for a jury trial to begin on May 7, 2012. Taylor and Thomas are to be tried on the charges described above; however, the Government is no longer seeking the death penalty. On March 23, 2012, Taylor filed the instant Motion for Relief from Prejudicial Joinder, and the Government filed its response on April 10, 2012. At the status conference held on April 23, 2012, Taylor advised the Court that he would not be filing a reply. The Court held

evidentiary hearings on May 3 and 4, 2012, at which the instant motion was discussed and argued. The Court issued an oral ruling denying the motion at the hearing on May 4, 2012, and this order is in accordance with its findings.

In his motion, Taylor argues that his confrontation rights will be compromised by a joint trial because he will not have the opportunity to cross-examine his co-defendant Thomas on inculpatory statements Thomas made during an interview with police. Taylor also argues that he will be prejudiced by the spillover of evidence offered against Thomas and that the efficiencies gained by a joint trial will not outweigh the prejudice to him. Taylor further asserts that the risk of prejudice during the retrial is greater than the risk present at the first trial because the Government is no longer seeking the death penalty and is therefore free to pursue a broader theory of the case. Finally, Taylor argues that the felon in possession charge described in Count 4 is inherently prejudicial because it will expose the jury to his prior criminal record.


ANALYSIS

**Severance of Defendants**

Federal Rule of Criminal Procedure 8(b) provides for joinder of defendants "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions,

constituting an offense or offenses." Fed. R. Crim. P. 8(b). However, if such joinder "appears to prejudice a defendant or the government," the defendants may be severed. Fed. R. Crim. P. 14(a). "In all but the most unusual circumstances, the risk of prejudice arising from a joint trial is outweighed by the economies of a single trial in which all facets of the crime can be explored once and for all." *United States v. Spagnola*, 632 F.3d 981, 987 (7th Cir. 2011) (quotation marks and citations omitted). When co-conspirators are indicted together, there is a preference for joint trials. *Id*. "[Joint trials] promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *Zafiro v. United States*, 506 U.S. 534, 537 (1993) (citing *Richardson v. Marsh*, 481 U.S. 200, 210 (1987)). A request for a severance should be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id*. at 539. Severance is not necessary "merely because [defendants] may have a better chance of acquittal in separate trials." *Id*. at 540. Furthermore, just because defendants have antagonistic defenses does not automatically mean that severance is required. See *United States v. Hughes*, 310 F.3d 557, 564 (7th Cir. 2002); *United States v. Mietus*, 237 F.3d 866, 873 (7th Cir. 2001). Rather, the risk of

potential prejudice can be cured by the issuance of limiting instructions from the court. *Zafiro*, 506 U.S. at 539.


## Confrontation Clause and *Bruton* Arguments

The Confrontation Clause of the Sixth Amendment provides that in all "criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. The Supreme Court has held that this right to confrontation bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004). While not offering an exhaustive list, *Crawford* establishes that testimonial statements include "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations."[1] *Id*. at 68. However, *Crawford* only applies to "testimonial statements offered to establish the truth of the matter asserted[;] . . . [w]here there is no hearsay, the concerns addressed in *Crawford* do not come in to play." *United States v. Bermea-Boone*, 563 F.3d 621, 626 (7th Cir. 2009) (citations omitted); see also *United States v. Tolliver*, 454 F.3d 660, 666 (7th Cir. 2006) ("It is important to emphasize again that,

---

[1] The Supreme Court later clarified that police interrogations are testimonial when there is no ongoing emergency and the "primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822 (2006).

aside from the testimonial versus nontestimonial issue, a crucial aspect of *Crawford* is that it only covers hearsay, i.e., out-of-court statements 'offered in evidence to prove the truth of the matter asserted.' Fed.R.Evid. 801. Thus, to restate, *Crawford* only covers testimonial statements proffered to establish the truth of the matter asserted.")[2]

In *Bruton v. United States*, however, the Supreme Court acknowledged that significant Sixth Amendment concerns are implicated when a confession of a nontestifying criminal defendant is admitted into evidence in a joint trial and such confession directly inculpates a co-defendant. See *United States v. Souffront*, 338 F.3d 809, 828 (7th Cir. 2003) (citing *United States v. Bruton*, 391 U.S. 123, 135–36 (1968)). The Supreme Court later clarified that the teachings of *Bruton* are not violated when a limiting instruction is given to the jury and the statement is redacted to appropriately eliminate any reference to the co-defendant's existence; in such a case, the statement is not incriminating on its face and only becomes so when viewed in conjunction with other evidence. *Id.* at 828-29 (citing *Richardson*

---

[2] See also *United States v. Ellis*, 460 F.3d 920, 923 (7th Cir. 2006) ("Hearsay evidence that is nontestimonial 'is not subject to the Confrontation Clause.'") (citing *Davis v. Washington*, 547 U.S. 813, 822 (2006)); but see *United States v. Thomas*, 453 F.3d 838, 844 (7th Cir. 2006) (nontestimonial hearsay statements are evaluated pursuant to *Ohio v. Roberts*). Under *Roberts*, an absent witness's hearsay statement can be introduced against a criminal defendant only if the witness was unavailable at trial and the statement bore certain "indicia of reliability," either by "fall[ing] within a firmly rooted hearsay exception" or by showing "particularized guarantees of trustworthiness." *Ohio v. Roberts*, 448 U.S. 56, 66 (1980).

*v. Marsh*, 481 U.S. 200, 208-11 (1987)). Confessions which have been redacted using blank spaces or deletions have been considered to be facially incriminating, but the Seventh Circuit has held that "the substitution of a defendant's name with a neutral pronoun or phrase in a codefendant's confession which does not 'strategically incriminate much less implicate' the defendant does not violate *Bruton*." *Id*. at 829 (citing *United States ex rel Cole v. Lane*, 752 F.2d 1210, 1216 (7th Cir. 1985)). In other words, "[i]f a proper limiting instruction is given to the jury, a redacted statement which incriminates a defendant only in conjunction with other evidence in the case does not violate *Bruton*." *Id*. at 830. See also *United States v. Green*, 648 F.3d 569, 575 (7th Cir. 2011) ("Statements that despite redaction, obviously refer directly to someone, often obviously the defendant, and which involve inferences that a jury ordinarily could make immediately are prohibited under *Bruton*.") (quotation marks and citation omitted).

In *Green*, the Seventh Circuit recently addressed a *Bruton* issue in which an agent testified as to a co-defendant's confession which also implicated the defendant. *Green*, 648 F.3d at 573. The case involved a fraudulent scheme to obtain mortgage loans, and the original confession by the co-defendant referred to the defendant by name as the purchaser involved in one of those transactions. *Id*. The statement was introduced in a redacted format which replaced the defendant's name with the term "straw buyer." *Id*. at

573-74. However, the jury heard other witnesses testify to mortgage and bank records which specifically named the defendant as the purchaser of the particular property at issue. *Id*. at 574.[3] The defendant later appealed claiming that the admission of this statement, even in redacted form, violated his rights under *Bruton* because the term "straw buyer" pointed to him as a participant in the scheme. *Id*. at 573. The Seventh Circuit held that, although a close call, the redacted statement was not "so obvious" a reference to the defendant so as to be in violation of *Bruton*. *Id*. at 575-76. The court acknowledged that, "[p]utting the[] pieces together, the jury could have inferred that [the defendant] was the straw buyer to whom [the co-defendant] referred." *Id*. at 574. However, the court noted that prior Seventh Circuit cases had found no *Bruton* violation "where the altered statement did not incriminate the nontestifying defendants by itself" but instead used an "open-ended reference ('inner circle') that avoided a one-to-one correspondence between the statement and the defendant, even if other evidence at trial incriminated the defendants as those members of the inner circle." *Id*. at 575 (citing *United States v. Stockheimer*, 157 F.3d 1082, 1086-87 (7th Cir. 1998)). The court found the "straw buyer" term to be a suitably anonymous reference and noted that although a jury could have made the connection

---

[3] In fact, a few minutes before the agent testified as to the co-defendant's confession, he referenced the defendant by name when he discussed bank records reviewed during the course of his investigation; these bank records named the defendant as the buyer of the real estate transaction. *Id*.

between the term and the defendant when viewing the evidence as a whole, the "connection was farther removed from the redacted statement than the clear correspondences present" in cases where *Bruton* was implicated. *Id*. at 576.

In his motion, Taylor takes issue with the portion of Thomas' statement to law enforcement made on July 28, 2000, which implicates Taylor in the robbery; Taylor argues that there is no way to introduce this statement without giving the impression that Thomas was making an accusation against Taylor, and, thus, his Sixth Amendment rights will be violated because he will not have an opportunity to cross-examine Thomas regarding his accusatory statement. At the previous trial, Special Agent Eric Ellis ("Agent Ellis") testified as to portions of Thomas' post-arrest statement. On direct examination, Agent Ellis first explained that Thomas admitted his Cadillac was used in a robbery. (Tr. Vol. 16, p. 87.) Agent Ellis then went on to testify, however, that Thomas stated that it was others who actually used the car in the robbery. (*Id*.) On cross-examination by Thomas' attorney, Agent Ellis was asked to relate additional information about Thomas' statements regarding the Cadillac. The specific statement that Taylor objects to describes a conversation Thomas allegedly had with co-defendant Damione Thomas (a/k/a "Papa") in which Thomas stated that Papa told him he "should have nothing else to do with the car" because Papa had given Taylor and Bud White the keys to Thomas' Cadillac and

they had used the car to commit a robbery.  Thomas' statement was
read into the record in a redacted form as follows:

> [Papa] said that **someone** and Bud came to him
> and said that they had - they had a lick and
> they needed a car.  You know what I'm saying?
> He didn't want to use Bud's car, and they had
> to go and stuff like that, and he gave him the
> keys to my car.

(Tr. Vol. 16, p. 94) (emphasis added to show the phrase that was
substituted for Taylor's name).  Also read into the record was
Thomas' statement that he had given Papa the keys to his Cadillac
and that Papa had, in turn, given "Bud and **another person** [the
keys]." (*Id*. at 95-96.)

As an initial matter, the Court notes that, at the evidentiary
hearing held on May 3, 2012, the Government acknowledged that it
will be seeking to introduce excerpts of Thomas' post-arrest
interview statement as an admission by a party opponent against
Thomas.  See Fed. R. Evid. 801(d)(2)(A).  As to the portion of the
statement that Taylor specifically objects to, the Government
states that it does not intend to introduce the statement to prove
the truth of the matter asserted (i.e. that Taylor asked for and
received the keys to Thomas' Cadillac to commit the robbery with
Bud) but rather as a false exculpatory statement against Thomas to
show consciousness of Thomas' guilt.  Therefore, while Thomas'
statement to law enforcement is testimonial in nature,[4] it is not

---

[4] Pursuant to *Davis v. Washington*, 547 U.S. 813, 822 (2006).

hearsay and, thus, the concerns of *Crawford* are not implicated. See *United States v. Bermea-Boone*, 563 F.3d 621, 626 (7th Cir. 2009) ("*Crawford* only covers testimonial statements offered to establish the truth of the matter asserted."); see also *United States v. Shorter*, 54 F.3d 1248, 1260 (7th Cir. 1995) (collecting cases establishing non-hearsay use of statements to show consciousness of guilt, including the admission of false exculpatory statements offered "not for their truth but merely for the fact that they were made, thereby implying consciousness of guilt").

The parties have framed the issue as one arising under *Bruton*, and, the Court will address Taylor's concerns as such.[5] Taylor likens the redaction used in the previous trial to the use of the word "deleted" and argues that, because the statement suggests that two people were involved in the robbery, the "only inference that can logically be drawn is that the remaining 'someone' is not the declarant Keon Thomas" but rather Taylor. Thus, Taylor asserts, the redacted statement contains an "obvious deletion" which conflicts with the teachings of *Bruton*. The Government, on the

---

[5] Again, the *Bruton* line of cases deal with situations in which the confession of one defendant, which also makes explicit reference to his co-defendant, is offered against the defendant at a joint trial. It is not clear to the Court that the statement at issue amounts to a confession by Thomas. In any event, the redacted statement complies with the spirit of *Bruton* and the Court finds that Taylor is not prejudiced by the sufficiently neutralized statement.

other hand, argues that the redacted post-arrest statement offered at the previous trial does not "obviously" refer to Taylor. Furthermore, at the evidentiary hearing, the Government agreed to further neutralize the statement by replacing the references to "someone and Bud" and "Bud and another person" with something along the lines of "some guys."[6] Therefore, the Government maintains, the statement does not refer to two individuals and there is simply no reason the redacted statement would be inappropriately linked to Taylor.

The Court does not foresee a *Bruton* problem because the use of the words "some guys" is not an obvious reference to Taylor. As in *Green*, the statement does not facially incriminate Taylor, and, taken alone, nothing in the redacted statement identifies Taylor as one of the "guys" who had allegedly asked for and was given the keys. The jury will be instructed to consider the statement only against Thomas. Additionally, any potential that the jury would disregard the Court's instructions and link Taylor to the statement would not involve immediate inferences but would rather require that a longer chain of indirect inferences be made. See *Green*, 648 F.3d at 576. Finally, although Taylor argues that the risk is too great that the Government or Thomas' attorney will rely on the redacted phrase to link the statement to Taylor, the Court has

---

[6] The new statements would read "[Papa] said that ***some guys*** came to him and said that they had – they had a lick and they needed a car" and that Papa had, in turn, given "***some guys*** [the keys]."

cautioned the parties in open court that such conduct will be considered sanctionable. Thus, Taylor has not demonstrated that severance is warranted based on the introduction of Thomas' statement as described above.

Spillover Evidence

The Seventh Circuit has held that a district court can abuse its discretion by denying a motion for severance when there is a "great disparity of evidence" between co-defendants which causes actual prejudice. *United States v. Moya-Gomez*, 860 F.2d 706, 765 (7th Cir. 1988). However, the fact that the government's evidence is greater against one defendant than it is against another does not automatically necessitate a severance. *United States v. Alviar*, 573 F.3d 526, 539 (7th Cir. 2009). To show that severance is warranted, "a criminal defendant must rebut the dual presumptions that a jury will (1) capably sort through the evidence and (2) follow instructions from the court to consider each defendant separately." *United States v. Lopez*, 6 F.3d 1281, 1286 (7th Cir. 1993).

Taylor argues that the evidence the Government will offer against Thomas is "more voluminous and concrete" than the evidence that will be offered against Taylor, and, as a result, the jury is likely to be confused. According to Taylor, the evidence against Thomas includes the following: Thomas' car was used in the robbery,

the appearance of the car was altered to avoid detection, that Thomas was in possession of a gun which may have been used in the robbery, and that Thomas admitted that his fingerprints might be found in the gun shop. He argues that no similar physical evidence will be presented to link Taylor to the crime and that further prejudice will result when the evidence against Thomas is viewed in connection with Thomas' statement that two people used his car to commit the robbery. The Government, however, points to the previous order in this case (DE #507) which dealt with Taylor's nearly identical request for severance based on spillover evidence, and asserts that "[n]othing has changed for Taylor" so the request should again be denied.

The Court has reviewed the record and finds that the reasoning in the previous order remains sound. There is not a great disparity in the evidence likely to be introduced against Taylor and Thomas. This is especially true in light of the fact that Taylor and Thomas have been charged as co-conspirators, and, as such, much of the evidence relating to the criminal acts of a co-defendant presented at a joint trial to prove the conspiracy would be admissible in separate trials as well. See *Alviar*, 573 F.3d at 539 ("Given that [the defendant] was charged in a conspiracy with his co-defendants, most evidence offered at trial would have been admissible in a trial against him alone. The jury was instructed to consider each defendant separately."); *United States v. Diaz*,

876 F.2d 1344, 1357 (7th Cir. 1989) ("[T]he trial judge should give deference to the strong public interest in having persons jointly indicted tried together, particularly where, as here, a conspiracy is charged and may be proved by evidence that arises out of the same act or series of acts.") (quotation marks and citation omitted). Here, appropriate limiting instructions will be given to the jury regarding the necessity for separate consideration of each defendant, which will serve to provide sufficient protection to Taylor for any risk of prejudice. Taylor has not shown any reason why the jury will be incapable of sorting through the evidence presented and following the Court's instructions. See *Opper v. United States*, 348 U.S. 84, 95 (1954) ("To say that the jury might [be] confused amounts to nothing more than an unfounded speculation that the jurors [will disregard] clear instructions of the court in arriving at their verdict. Our theory of trial relies upon the ability of a jury to follow instructions."); *United States v. Del Valle*, 674 F.3d 696, 705 (7th Cir. 2012) ("[T]he existence of a disparity in weight of evidence against a moving defendant and co-defendants does not itself amount to grounds for severance. This fear of 'spill-over' can be mitigated sufficiently when there is ample evidence to convict the moving defendant and when jury is given instructions to assess each defendant individually.") (citations omitted). Thus, in his motion, Taylor has not

demonstrated that severance is warranted on grounds of spillover evidence.

### Efficiency and Prejudice

When co-conspirators are indicted together, there is a strong presumption for joint trials. *Zafiro*, 506 U.S. at 537. The Seventh Circuit has stated that:

> [t]here is a strong interest in joint trials of those who engaged in a criminal enterprise. Joint trials reduce the expenditure of judicial and prosecutorial time; they reduce the claims the criminal justice system makes on witnesses, who need not return to court for additional trials; they reduce the chance that each defendant will try to create a reasonable doubt by blaming an absent colleague, even though one or the other (or both) undoubtedly committed a crime. The joint trial gives the jury the best perspective on all the evidence and therefore increases the likelihood of a correct outcome.

*Diaz*, 876 F.2d at 1357 (citing *United States v. Buljubasic*, 808 F.2d 1260, 1263 (7th Cir. 1987)). However, courts must "balance the risk to defendants who move for severance against the benefits gained by joint trials . . .[and] should continue to evaluate the risk of undue prejudice resulting from joint trials throughout the proceedings." *United States v. Morales*, 655 F.3d 608, 625 (7th Cir. 2011).

Taylor argues that the efficiency gained by a joint trial is only "minimal" because, the witnesses inculpating Thomas do not overlap with the witnesses pertaining to Taylor. He also argues

that the risk of prejudice to Taylor will be greater in this trial than it was in the first trial because the Government is free to pursue a broader theory of the case as the death penalty is no longer being sought.

The Court finds Taylor's arguments unpersuasive. Although he asserts that only one witness, Damione Thomas, will testify against both men, he ignores the fact that much of the other evidence that will be presented at trial applies to both Taylor and Thomas as co-defendants and co-conspirators. See *Alviar*, 573 F.3d at 539 ("Given that [defendant] was charged in a conspiracy with his co-defendants, most evidence offered at trial would have been admissible in a trial against him alone.") Separate trials would necessitate separate juries, would require attorneys from both sides to prepare and try two cases, and would involve additional court related services, utilities, time, scheduling, and expenses. The vast majority of the evidence, services, and expenditures would need to be duplicated at separate trials. The efficiencies of a joint trial are not minimal by any means.

Furthermore, in his motion, Taylor has not shown why the risk of prejudice would be inherently greater at the retrial than at the original trial due to the lack of the death penalty issue. He states that the jury will not necessarily need to determine and agree upon the roles of the various actors and generally points to mutually antagonistic defenses and Confrontation Clause issues;

however, he does not specifically tie any of these issues to a greater risk during retrial or sufficiently explain how the defendants' respective defenses would conflict. Taylor has failed to offer any specific evidence or defense that sufficiently shows he and Thomas have mutually antagonistic defenses or that, even if they did, unfair prejudice would result. See *Zafiro*, 506 U.S. at 538; *United States v. Plato*, 629 F.3d 646, 650-51 (7th Cir. 2010) (blame shifting or finger pointing among co-defendants, without more, does not mandate severance; rather, limiting instructions can be used to cure any risk of prejudice).

Based on these facts and the issues raised in the preceding and following sections of this order, the Court has balanced (and will continue to balance throughout the trial) the risk of prejudice to Taylor and finds that the risks arising from a joint trial are not outweighed by its economies. See *Alviar*, 573 F.3d at 539. Thus, severance is not warranted on grounds of prejudice.

**Severance of Charges**

Federal Rule of Criminal Procedure 8(a) provides for joinder of multiple offenses if they "are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Fed. R. Crim. P. 8(a). Proper joinder of offenses is determined from the face of the indictment, and the

rule is construed broadly so as to "conserv[e] judicial resources and avoid[] costly, duplicative trials." *United States v. States*, 652 F.3d 734, 742 (7th Cir. 2011) (citing *United States v. Blanchard*, 542 F.3d 1133, 1141 (7th Cir. 2008). Overt acts that are charged on the face of the indictment as part of the conspiracy are "part of the same act or transaction constituting parts of a common scheme or plan." *United States v. Thompson*, 286 F.3d 950, 968 (7th Cir. 2002) (citing *United States v. Curry*, 977 F.2d 1042, 1049 (7th Cir. 1992). The charges, however, may be severed if a defendant would be prejudiced by the combination. *Id*. See also Fed. R. Crim. P. 14(a).

Taylor argues that the nature of the charges in Count 4 and the fact he is a felon will have an inevitable spillover effect, which is "sufficiently inflammatory" to lead a jury to convict him of the other charges even absent additional supporting evidence. Taylor further argues that, even if he were to stipulate to his prior conviction, the very fact that he was previously convicted "may lead the jury to give greater credit to any evidence against him." The Government points out that this claim was addressed and rejected by the Court. (DE #507.)

The Court has again reviewed the record and finds that the reasoning in the previous order remains sound. The Government's position referenced by the prior Court was that the guns the

defendants are charged with possessing in Counts 4, 5, and 6[7] are
the same firearms that were either stolen in the murder/robbery or
used to commit the murder/robbery at issue.    Furthermore, the
Second Superseding Indictment describes, as part of the manner and
means of the conspiracy, that Taylor and Thomas committed the
robbery for the purpose of obtaining firearms so that some of the
guns could be sold for cash or bartered; it also notes that the
robbery was allegedly committed for the purpose of obtaining
firearms for Taylor and Thomas, both convicted felons, who were
prohibited from legally obtaining firearms.    Thus, based on the
face of the Second Superseding Indictment, the Court agrees that
Count 4 has been properly joined with Counts 1, 2, and 3 as it is
closely related in time and based on the same acts or transactions
connected together or constituting parts of a common scheme or
plan.

    Additionally, the Court notes that Taylor's argument that he
will be prejudiced by the spillover evidence of his prior felony is
unpersuasive, especially in light of the Seventh Circuit's
precedent that such spillover is not normally sufficient to require
severance of properly joined charges.    See *United States v.
Abdulhaq*, 246 F.3d 990, 992 (7th Cir. 2001) (collecting cases).
Taylor presents no reason why a proper limiting instruction, as

---

    [7]    Count 4 charges Taylor with possessing one (1) Intratec, model Tec-9,
semi-automatic pistol, while Count 5 charges Thomas with possessing the same.
Count 6 charges Thomas with possessing one (1) Glock .9mm, semi-automatic pistol.

will be given by the Court, would not serve to protect him from any potential prejudicial spillover. See *United States v. Ervin*, 540 F.3d 623, 630 (7th Cir. 2008) ("We presume a jury attend[s] closely [to] the particular language of the trial court's instructions in a criminal case, including when the jury is instructed to consider each count and the relating evidence separately.") (quotation marks and citation omitted); *United States v. Ross*, 510 F.3d 702, 711 (7th Cir. 2007) (denial of severance was proper when the jury was instructed to consider defendant's felon status "only when resolving the felon-in-possession count and to give each count separate consideration and we must presume the jury followed such instructions.")

Finally, the Court notes that, at the evidentiary hearing, Taylor agreed to stipulate to his prior conviction. The Government stated that it would be willing to offer language that "before a certain date the defendant had been convicted of a crime punishable by a term of incarceration of more than one year." Taylor asserts that even this stipulated language is too prejudicial because the very fact that he was previously convicted "may lead the jury to give greater credit to any evidence against him." He argues that language describing Taylor as a "person prohibited under the law from possessing a firearm" would be less prejudicial. While arguably true, the Court finds that the stipulation as offered by the Government coupled with a proper limiting instruction is

sufficient to eliminate the risk of prejudice to Taylor. See *United States v. Stokes*, 211 F.3d 1039, 1043 (7th Cir. 2000) (no prejudice from denial of a motion to sever when "trial judge allowed the defendant to stipulate to his prior felony convictions in language that was sanitized of the words 'felon' or 'felony,' as well as the details of his crimes.") Thus, in his motion, Taylor has not demonstrated that severance is warranted by the joinder of the charge described in Count 4.

CONCLUSION

For the reasons set forth above, as stated during the evidentiary hearing on May 4, 2012, Defendant Taylor's Motion for Relief from Prejudicial Joinder (DE #1085) is **DENIED**.

DATED: May 7, 2012                    /s/RUDY LOZANO, Judge
                                      **United States District Court**